IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| David Keith Buff, #311020, | ) C/A No. 5:11-234-TLW-KDW |
| Plaintiff, | ) |
| v. | ) Report and Recommendation |
| South Carolina Department of Corrections; Jon E. Ozmint, Director of South Carolina Department of Corrections; Current Unknown Director of South Carolina Department of Corrections; Elbert Pearson, Security Threat Group Coordinator; McKither Bodison, Warden; Wayne McCabe, Warden; Ralph Hunter, Associate Warden; Fred Thompson, Associate Warden; Eugene Skipper, Sergeant; Jamana Ravenell, Caseworker, | ) |
| Defendants. | ) |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights. This matter is before the court on the Motion for Summary Judgment filed by the Defendants on September 1, 2011. ECF No. 43. As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[1] on September 2, 2011, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 44. Plaintiff responded to Defendants' motion on October 6, 2011, Defendants filed a reply on October 25, 2011, and the Plaintiff filed a response Defendants' reply on November 3. ECF Nos. 47, 54, 55. Defendants filed a Motion to Strike Plaintiff's Sur-Reply on November 4, 2011 and Plaintiff filed a Response to Defendants' Motion to Strike on November 14, 2011. ECF Nos. 56, 57. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the

---

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because the Motion for Summary Judgment is dispositive, a Report and Recommendation is entered for the court's review.[2]

I. Background

Plaintiff David Keith Buff is an inmate housed at Liber Correctional Institution ("LCI") in Ridgeville, South Carolina, where he is serving a ten-year-sentence for First Degree Lynching. ECF No. 1 at 5, 43-1 at 1. Plaintiff filed his Complaint on January 28, 2011. ECF No. 1. Plaintiff alleges a number of constitutional and other deprivations against Defendants, including challenging his classification as a Security Threat Group ("STG") member and his assignment to Special Management Unit ("SMU") on security detention, the confiscation of his legal materials, the conditions of confinement in SMU, and the denial of his requests for mental health treatment. ECF No. 1 at 1-24. Plaintiff requests declaratory and injunctive relief; compensatory damages ranging from $25 to $5,000 against each Defendant, jointly and severally; punitive damages; costs; and trial by jury. ECF No. 1 at 31-36.

II. Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v.*

---

[2] Other pending motions are addressed within.

2

*Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the evidence and arguments submitted, the undersigned recommends that Defendants' Motion for Summary Judgment be granted, thus ending this case.

III. Analysis

Defendants have filed a Motion for Summary Judgment alleging that Plaintiff's Complaint should be dismissed because: 1) Plaintiff has failed to exhaust all available administrative remedies prior to filing his action, 2) Plaintiff's challenge to his confinement in SMU and his classification as a member of a STG lacks merit, 3) Plaintiff does not have a constitutional right to possess gang related materials, 4) Plaintiff is required to bring a habeas corpus petition to obtain his immediate release from Special Management Unit and to exhaust his state judicial remedies, 5) Defendants in their individual capacity are entitled to qualified immunity, 6) Defendants in their official capacities are not "persons" amenable to suit under 42 U.S.C. § 1983. ECF No. 43.

A. Failure to Exhaust

Defendants contend that they are entitled to summary judgment on Plaintiff's claims because he has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). ECF No. 43-1 at 4. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

3

correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative remedies. *See Booth v. Churner*, 532 U.S. 731 (2001). "[T]hose remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

Satisfaction of the exhaustion requirement requires "'using all steps that the agency holds out, and doing *so properly[.].*'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). The SCDC's Inmate Grievance System provides procedures for formal review of inmate complaints. Initially, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." If the inmate disagrees with the disposition of the Step 2 Grievance, the inmate may appeal to the Administrative Law Court.

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court[.]'" *Woodford*, 548 U.S. at 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more

4

quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement. *Cf. Booth*, 532 U.S. at 738 (noting the available remedy is to be exhausted "*before* a complaint under § 1983 may be entertained.") (emphasis in original). A number of courts have recognized that the plain language of the PLRA and Supreme Court authority makes exhaustion a precondition to filing an action in federal court. *See, e.g., Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (noting prisoner must exhaust available administrative remedies prior to filing suit); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 36 (1st Cir. 2002) (finding dismissal, rather than continuance was appropriate when prisoner had not exhausted available remedies because "Congress clearly made the exhaustion of remedies a necessary antecedent to filing a claim in federal court"); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) (agreeing with other circuits that "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

Here, Plaintiff's inmate record reveals that he has not exhausted his available administrative remedies as to his procedural due process claim with respect to the March 19, 2009 Institutional Classification Committee (ICC) hearing, claims concerning the confiscation of his legal materials, claims concerning the conditions of confinement in SMU, and the denial of his requests for mental health treatment. *See* Hallman Aff., ECF No. 43-2. Specifically, Hallman[3] discusses SCDC information regarding Plaintiff's potentially relevant grievances and attests, at the time Plaintiff filed his Complaint on January 28, 2011, that Plaintiff had filed a

---
[3] Ann Hallman is employed by the SCDC as the Branch Chief for the Inmate Grievance Branch. ECF No. 43-2 at 1.

total of eight grievances during his time at LCI. ECF No. 43-2 at 1. Hallman reviewed these grievances and avers that none of the eight grievances complain about the conditions of Plaintiff's incarceration or health care issues. ECF No. 43-2 at 2. Hallman notes that Plaintiff filed Grievance Number LCI-373-10, which was signed by Plaintiff on April 8, 2010, concerning his ICC hearing on March 19, 2009. *Id.* Hallman explains that this grievance was not processed because the grievance was filed more than fifteen days after the hearing. *Id.* Hallman further notes that this grievance did not complain about the procedures followed during the hearing, nor did Plaintiff complain that he was denied notice, an opportunity to be heard, or any due process rights. ECF No. 43-2 at 2-3. On the issue of his confiscated legal materials, Plaintiff filed Grievance Number LCI-382-10 which was received by the Inmate Grievance Coordinator at LCI on April 24, 2010. ECF No. 43-2 at 2. This grievance was found to be untimely and was not processed because it was filed more than 15 days after Plaintiff's legal material was taken on January 26, 2009. *Id.*

Plaintiff responds to Defendants' exhaustion arguments by stating that he has attempted to exhaust the remedies available to him by filing multiple interdepartmental grievances that have either been returned as unprocessed or not answered. ECF No. 47 at 2. Plaintiff contends that there are no longer any remedies available for him to exhaust because his multiple unanswered or unprocessed grievances show that refiling additional grievances will end with the same result. *Id.* Plaintiff also offers a copy of a grievance on mental health issues, dated February 18, 2011, that he contends went unanswered, to contest Defendants' claim that he did not file a mental health or other grievances. ECF No. 47-1 at 1.

6

Plaintiff's general allegations regarding the grievance process are insufficient to overcome the undisputed evidence that he has not exhausted LCI's administrative remedies with regard to any allegations involving his due process challenges to ICC hearings, the confiscation of his legal materials, or the conditions of confinement. In addition, Plaintiff's February 18, 2011 grievance was filed after Plaintiff instituted this lawsuit on January 28, 2011 and cannot refute Defendants' evidence that Plaintiff did not file a mental health grievance. *Anderson v. XYZ Corr. Health Servs., Inc.,* 407 F.3d 674, 677 (4th Cir. 2005) (exhaustion is a prerequisite to suit that must be completed prior to filing an action). The undersigned, therefore, recommends summary judgment be granted to Defendants on these claims.

B. Plaintiff's Challenge to His Classification and Confinement in SMU

Plaintiff's Complaint also challenges his continued confinement in the SMU as a result of his classification as a validated member of an STG, namely the Folk Nation.[4] ECF No. 1. Defendants argue they are entitled to summary judgment on this claim because Plaintiff has not demonstrated that he has been subjected to a constitutional deprivation due to Plaintiff's continued classification as a validated-STG member or his continued assignment to SMU. ECF No. 43-1 at 12. Defendants contend Plaintiff admits to being a member of the Folk Nation, which is designated a STG. ECF No. 43-1 at 8-9. Defendants further aver that Plaintiff has not complied with the initial step in the renunciation process[5] that would allow Plaintiff to renounce his affiliation with the Folk Nation, nor can Plaintiff show that he is a legitimate candidate for

---

[4] Folk Nation is a gang that has been designated as an STG both nationally and by the SCDC. *See* Elbert Pearson Aff., ECF No. 43-3 at 2. Elbert Pearson is employed as an investigator with the Special Investigations Unit of the SCDC. ECF No. 43-3 at 1.
[5] As an initial step in the process of renunciation, the inmate must complete certain paperwork consisting of an STG Renunciation Form and an STG Renunciation Questionnaire, the latter being a detailed questionnaire inquiring why the inmate wants to renounce membership or affiliation with the STG. *See* Elbert Pearson Aff., ECF No. 43-3 at 3.

7

renunciation due to Plaintiff's confirmation that he remains an adherent to the Folk Nation. ECF No. 43-1 at 3, 9-11. Defendants also contend that there is no liberty interest in security or custody classifications and that Plaintiff's history of prison gang violence resulting in the death of another inmate in 2006 establishes that he is properly classified and housed in security detention. ECF No. 43-1 at 11-12.

In response to Defendants' argument that Plaintiff does not have a liberty interest in security or custody classification, Plaintiff cites to *Sandin v. Connor*, 515 U.S. 472 (1995), and contends that there is a liberty interest in a custody status when 1) custody results in an atypical and significant hardship in either duration or degree or restriction in relation to the ordinary incidents of prison life. ECF No. 47 at 3-4. Plaintiff argues that the majority of circuit courts have considered the nature of confinement and its duration in determining whether the confinement imposes "atypical and significant hardship." ECF No. 47 at 4. Plaintiff contends that he has been in SMU for 2.5 years and the deprivation in his case is both extreme in degree and duration. ECF No. 47 at 6. Plaintiff cites to circuit court cases that have held that a minimum of 305 days of confinement gives rise to protected liberty interest. *Id.* Plaintiff also argues that he does not have a history of repeated violence and that he has only one incident of violence on his record, which occurred five years ago. ECF No. 47 at 7. Plaintiff also contends that he was exercising his constitutional rights when he admitted that he was an adherent to Folk Nation. *Id.*

The undersigned finds that Plaintiff's arguments are without merit. Plaintiff cannot show that he has a liberty interest in his security or custody classification. The Fourth Circuit has held that a liberty interest is not implicated when inmates are placed on administrative segregation

8

because, when compared with conditions they would expect to experience as an ordinary incident of prison life, such placement does not constitute an atypical and significant hardship. *See Beverati v. Smith*, 120 F.3d 500, 502–04 (4th Cir. 1997). Plaintiff also has not offered any evidence that would create an issue of fact concerning whether he was appropriately classified as a member of an STG and thereafter confined in SMU. The undersigned, therefore, recommends that summary judgment be granted to Defendants.

    C.  Qualified Immunity

Defendants also assert that they are entitled to qualified immunity. ECF No. 43-1 at 16-18. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been

violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, assuming arguendo that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. *Maciariello,* 973 F.2d at 298. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

D.  Defendants in Their Official Capacities

Defendants also assert that in their official capacities they are not "persons" amenable to suit for money damages. Defendants may not be sued under §1983 for damages in their official capacities as such an action against the official's office is the same as a suit against the State.

*Bright v. McClure*, 865 F.2d 623, 626 (4th Cir. 1989). The State has immunity from suit pursuant to the Eleventh Amendment of the Constitution. Additionally, defendants sued in their official capacity are not "persons" within the meaning of §1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, Plaintiff's claims against Defendants in their official capacities also should be dismissed.

    IV.    Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 43, be GRANTED, and that this case be dismissed. If the district judge accepts this recommendation, Defendants' Motion to Strike Plaintiff's Sur-Reply and Plaintiff's Response, ECF Nos. 56, 57, and Plaintiff's motion for leave to file, ECF No. 63, will be moot.

    IT IS SO RECOMMENDED.

June 25, 2012  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**